Good morning. May it please the court, my name is Anne McLennan. I represent Justin Whittington and I would like to reserve two minutes for rebuttal. Okay, the clock counts down as I'm sure you know. We'll help you to keep track. Thank you. This case involves the question of whether using a gun under 924C, whether the interference with housing is a crime of violence. Our position is that it is not. The statute, 42 U.S.C. 3631, does not require physical force for commission of a felony. No physical force was alleged. Under the force clause of using a gun, the 10-year mandatory minimum must be based on the use or threatened use of physical force. And I would note that I stated in my brief that this is that the standard of review is plain error, but then I provided to the Court the Court's own case, United States v. Walton, and it is my belief that since this is simply a question of law, that this Court should consider this case for de novo review. The ---- Roberts Counsel? Yes. Why isn't this language in 3631 by force or threat of force sufficient? Because it doesn't say physical force. Because all the statutes, and by all the statutes I mean ACCA, I mean 16B in the Immigration Code, and the defining section of that, which is, I believe, 1131 or 1311, the defining statute all require physical force. And to simply say force or threat of force is too broad, and especially in this case. I'm trying to think of a way that you could use force, but not force or the threat of force, but not of physical force to do the intimidating. Well, the ---- There are other cases where I recognize that you can. For example, I think it was at a Florida case that came up in Johnson where a touching that wasn't forceful might suffice. Right. Your Honor, in the cases, there was a case of assaulting a Federal officer. There was a case of a purse snatch. There was extortion. There was robbery. And there was resisting arrest. And all of those were considered not to be violent felonies because they did not require and require, I believe is the operative word, physical force. They ---- Counsel? Yes. I'd like to follow up on Judge Kleinfeld's question. Is this statute divisible or indivisible with regard to the question of force? I believe that it is indivisible, because the way the statute reads, it starts with a misdemeanor. And let me just say that I believe it's indivisible, but in this case, I don't even believe that it matters. But I think that it starts with the misdemeanor. This is what happens, and you get under a year. Okay? But the felony section is indivisible. But don't we have to look at the nature of the force that the defendant is accused of employing in order to determine whether or not it was violent force? I mean, in this case, it was a sawed-off shotgun. So if the modified categorical approach applies, if the statute is divisible, it's a pretty easy question to answer. But I'm wondering why we don't have to employ the modified categorical approach in order to determine how this crime was committed or which crime it was. First, I disagree, because we don't use the modified categorical approach to say, what did he have? No, no, no, I understand that. But your argument is that the statute can be violated in a number of different ways, some of which are felonies and some of which are misdemeanors, depending on the type of force used. My question is a very practical one. How does the court know how to sentence the defendant or which crime, misdemeanor or felony was committed without looking at the type of force that was employed? Boy, that's a lot of questions wrapped up in that. I know, and this is not an easy analysis. No, it isn't easy. It's very complicated. And I think that's why the Supreme Court has said, especially in Mathis and de Camp, look, is it does the statute prohibit, does it say anything about use of physical force? I think if it doesn't, then there is a problem. But force is different from assault, is it not? I mean, Johnson dealt with the question of whether or not an assault can be committed with a simple touching that does no more than, I guess, interfere with the bodily integrity of a person without committing actual injury. Here, the statute uses the term force or threat of force. It does use force. Which sounds to me to be more — it's a more active adjective or description of the way in which the crime was committed. It also says force or threat of force to intimidate or interfere. And what I'm saying is, even if you do the modified categorical approach, which all it gives you is the right to look at the paperwork that underlies the statute, it lets you look at the indictment, it lets you look at the — Doesn't that paperwork get us to subsection C, where it says, if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives or fire? That's how you get to the felony. And isn't that established in this case? I think that's how you get to the felony. That's the — But, counsel — So if he used a gun — Counsel? Yes. Excuse me, counsel. Isn't it established in this case by the Shepard-Taylor documents that we do get to subsection C? Yes. So really, the only question left is the visibility. Well, subsection C — you're talking about subsection C in 42 U.S.C. 3631,  Correct. Interference with housing. That's the — The phrase — the phrase that I'm asking about is, if such acts include the use, attempted use, or threatened use of a dangerous weapon, et cetera. Right. That's the felony. That's what gets you up there to the felony. And isn't that established in this case by Shepard-Taylor cognizable documents? Yes. So — That's — it's in the statute. Why isn't it violent force, then? Because there's no — you could — I can — someone can walk anywhere and have — have or have a gun and — and say or write a letter or in — in any way say, get out of town. Well, just having a gun — in my State, just about everybody has a gun. But they don't, by force or threat of force, intimidate or interfere with it unless they draw it and point it. Well, there's an assumption that I don't believe the statute says. It says — what the statute says is that force or threat of force intimidated or interfered because the person was occupying a dwelling and then used — threatened to use or attempted to use a dangerous weapon. So a person can — you said for me to think — How do — how do — how does a hypothetical person use a gun, a firearm, or a weapon to intimidate without it being a force or threat of force? I mean, if you use a firearm to intimidate, maybe you point it, maybe you shoot in the air, maybe you shoot the person. I don't understand why that isn't always violent force. It's not — it's not physical force. And so if you say, I'm going to get you if you don't move, that violates the statute, but it is not violent. It is not a violent crime for the purposes of 924C. But that, I'm going to get you, doesn't involve the use of — or attempted use of a weapon. Use or threatened use of the dangerous weapon. I'm going to get you with a gun. Does it matter that our analysis by looking at the documents show that the weapon was a sawed-off shotgun, which is inherently a dangerous weapon under the Federal Firearms Act? Is it not? Yes, yes it is. So isn't the mere possession of the dangerous weapon at the time he tells the victim to get out of Oildale, even though we know he also fired it, isn't that enough to establish that the crime was committed with a dangerous weapon? It is — it is enough to violate 3631. And 924C. No. Because — The possession of a sawed-off shotgun is in itself, whether it's employed, discharged, or even displayed, a violation of 924C, isn't it? Your Honor, this — that particular question has had many answers in the time that I've been practicing law, and I don't — I can't honestly tell you whether it currently is — You don't think that's possession? — a violent felony. Right now, I do not believe so. Well, that's not my question. My question is, is the possession of a short-barreled shotgun, as defined in the Federal Firearms Act, inherently the possession of a dangerous weapon? I think the answer is yes under 924C. I don't think so. I mean, it's like possessing a machine gun. This is not — It's not like possessing — This is not a hunting weapon. Well, I think we've established over the years that a hunting weapon is not necessarily a safe weapon. 924C requires that the crime of conviction be violent physical force. Okay? And in this case, interference with housing is not — does not establish that, with or without the modified approach. We've taken you well over time. Let's hear from the government, and we'll give you two minutes in rebuttal. Thank you. May it please the Court, Erin Flynn, on behalf of the United States. Your Honors, the defendant's felony conviction for interference with fair housing rights as charged in Count 1 is a crime of violence. And two elements make that clear, as goes to both Judges Kleinfeld and Tallman's questions. And those elements are, one, that the jury had to find that the defendant used force or threat of force, and, second, that the jury had to find that that force included the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire. Given those elements, the offense easily meets the definition of a crime of violence under Section 924C3A, which requires only that the offense always involve the use, attempted use, or threatened use of physical force against the person or property of another. And where physical force has been defined as only that force capable of causing physical pain or injury, certainly it's always the case that using or threatening force that includes the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire is force capable of causing physical pain or injury. And for that reason, there was no error, let alone plain error, in the district court instructing the jury that Count 1 was a crime of violence. You know, it might make a difference to the resolution of this case whether plain error review or de novo review applies. Could you address Judge Rakoff's opinion, recent opinion, and the argument is that based on that opinion, we're out of plain error review and into de novo review? Well, first I would just note that in Walton in particular, Your Honor, the panel there pointed to the fact that below they didn't actually think that the defendant had failed to raise these arguments in the district court. And so that partially was part of the prejudice analysis as to the government having both an opportunity in the district court and in the circuit court to address the issues of  violence. Certainly, this court's opinions do recognize that it's within the court's discretion as to whether to apply plain error review where it's purely a question of law here. It is a pure question of law as to whether an offense is a crime of violence. That said, we still think that a plain error standard is appropriate because it wouldn't be clear to the district court or clear or obvious to the district court either that Section 3631 isn't a divisible statute or that Section 3631 is charged where you have both a force or threat of force and the inclusion of a use of a dangerous weapon, that with those elements, it's not clear or obvious that this offense isn't a crime of violence. And certainly, to get to your question, Judge Tallman, the statute — No, I'm — Oh, sorry. I'm still working on my question. Okay. Sorry, Judge Fletcher. But I would like you to answer mine, too, after you're done answering my question. Yeah. We'll make sure — Keep track of everyone. Yeah. Yeah. We'll make sure you have plenty of time to answer everything. Okay. As I read that opinion, it says that if it's a pure question of law and if there's no prejudice to the party against whom the question might be decided — Right. — then we can do plain error. Is there some prejudice to the government from the fact that it wasn't raised below this does look like a pure question of law, but is there nonetheless some prejudice to the government to be deciding it now? Well, certainly, Your Honor, any time that it's a question that's threatening the finality of the judgment, it's prejudicial to the government. I would also — But that's true for any appeal. Right. Exactly. So we're not talking about that kind of prejudice. But I — and it's different than factual questions below where we wouldn't have had an opportunity, for example, to make all of the arguments or have all of the documents in the record. Certainly, in cases, for example, where the district court would have decided against us below on an issue of a crime of violence, we'd have the so-called — I think you'd need to be more concrete on this. But we — What would you have — what would the government have done differently if the defendant had said, this isn't a crime of violence and the jury instruction is wrong and I want something different? Well, I think, you know, we could have potentially fleshed out the jury instruction differently. The pattern instructions here do submit the question to the jury as a legal question. It sort of avoids confusion with trying to have a jury match elements for the crime of violence definition against the elements of the offense, as this court and the numerous decisions on crime of violence show. It's difficult for the counsel and judges to sometimes do that matching, never mind submit the question to the jury. I do think, though, that where — So far, it's all kind of chitchat. I'd really like some concreteness on what the alternative words might have been, what sort of debate there might have been. I don't think here that it would have changed the instruction to the jury. And as I've said, it's within the panel's discretion as to whether to apply plain error review or de novo review. But just to finish, Your Honor, I do think that the government is prejudiced, for example, where we have the benefit and the court has the benefit of a district court opinion below, we can not only respond to the defendant's argument but respond to the court's concerns as to why that might not be a crime of violence and then raise those arguments before this court as an appeal as of right. But standing here today, if this court were to decide in the first instance that this statute isn't a crime of violence, the government is prejudiced in that we're only left with discretionary review, whether or not coming back to this court for rehearing, for example, or further review. Look, saying it's harder on the government is just not helpful. What I want to know is, suppose that instead of saying a lot of these things for the first time in the blue brief, the appellant's brief, the exact same words as the appellant's brief would have been urged in a motion in the district court. What prejudice does the government have in this case because that wasn't done? Your Honor, in this case, I don't think that there necessarily is prejudice. It's not as though, for example, that the defendant or the victim suffered both bodily injury and that there was use of a dangerous weapon, explosives, or fire, and that we charged only one and not the other, for example, or that we charged only bodily injury and we did not include use of a dangerous weapon, explosives, or fire, which, for example, we might submit as a clearer element or a clearer offense that satisfies the definition of a crime of violence than perhaps bodily injury. So, if I could just move from the standard of review to the … You're saying if the defendant had raised this below, you would have amended the indictment to charge that subsection that I was reading from in 3631? No, Your Honor, I'm not saying that. I'm saying that this particular case might not raise prejudice to the government in this not having been raised below, but that's not to say that in any case in which the defendant doesn't raise the crime of violence objection below, that the government isn't going to be prejudiced on appeal. And so we don't think that it would be appropriate as a general matter to say that whenever the defendant is challenging a crime of violence for the first time on appeal, that it's never prejudicial to the government. I think the way that we charge this is the way that we would consistently charge this. We would have argued this the same way in the district court. That sounds to me as though there's no prejudice to the government for our deciding it now as a matter of law. I mean, I have not heard any prejudice. Well, Your Honor, and that's why I'm saying that regardless of whether there's plain error review, there's no error here. And so if it's a de novo review or plain error review … I get that, too. But it sounds as though you've got no argument of governmental prejudice that would basically require us to treat this as plain error review. I think we still can, given that it was not raised below, but I'm not sure we're required to, at least based on what you just told me. Right. And that's why I would say that it is within the court's discretion to make that determination. Okay. Now, Judge Tolma's question has been waiting. Thank you. Divisibility. Yes. So I would say that it's important for the analysis here as to whether this offense is a crime of violence, basically because when you look only at a misdemeanor offense of Section 3631, that wouldn't satisfy the crime of violence definition because a crime of violence has to be a felony that involves the use, attempted use, or threatened use of force against … physical force against a person or property of another. But the statute is divisible under Mathis, and it has all the markers of divisibility, which are that, one, it defines multiple crimes, and that's clear from Sections A, B, and C of the statute. Section A, which was charged in this case, reaches both threats of force against a person because of race, for example, based on their exercise of housing rights. Section B would allow a defendant, the government to charge a defendant who threatened a real estate agent, for example, for helping someone find a home. And Section C would allow us to charge, for example, a defendant who threatened a housing advocate for trying to promote fair housing rights. It's also, with the graduated punishment scheme, clear under Mathis that there's a misdemeanor, a felony punishable to 10 years, a felony punishable to life, and that those have the hallmarks of a divisible statute. And so once you have multiple offenses, you then need to isolate the statute of conviction, and certainly once the court isolates the statute of conviction here, which is a statute that the defendant, by force or threat of force … Kennedy, what's his conviction under Subsection C? Your Honor, I'd just like to clarify. I'm not sure I'm following you when you're discussing Subsection C, so that … So the jury returned a verdict based on instructions. Exactly. Was he convicted under Subsection C or just Subsection 3631? So the defendant was convicted under Section … Subsection A of 3631, which is conduct where the defendant takes action against a person because of their race and exercise of housing rights. So for all 3631 offenses, the government has to show force or threat of force that willfully injures, intimidates, or interferes with under Subsection A of the statute, and we have the full text of the statute in our addendum. The government has to show elements because of race and because of the exercise of housing rights, and then that constitutes the misdemeanor offense. The language in terms of the felony enhancements aggravating factors aren't broken down into A, B, or C, for example, Your Honor. It's just that the first clause of the punishment is a misdemeanor. The second clause of the punishment is an offense – it's the felony offense allows punishment up to 10 years, and then the third clause of the punishment allows a felony punishable up to life. So there's no Subsection C for purposes of the penalty. I don't know if you understood my question. Did the jury verdict on the instructions – be sure to listen to me and not just think of what you're going to say. Right. Does the jury verdict, as delivered under the instructions that the court gave the jury, establish that the jury found that the defendant's acts included the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire? Your Honor, the verdict form is at excerpts of Record 11. There was no special verdict where the jury marked that the offense included the use, attempted use, or threatened use of dangerous weapon, explosives, or fire, and that's because when the jury was instructed, and the instructions are at our supplemental excerpts of Record at 786, the jury was instructed that it had to find beyond a reasonable doubt the four elements of the offense, and here those four elements were that first, the defendant used force or threat of force, second, that the defendant willfully intimidated or interfered with the victim, third, that the defendant acted because of the victim's race and because he was occupying a dwelling, and fourth, importantly, that the defendant's conduct involved the use, attempted use, or threatened use of a dangerous weapon. So when the jury found that the defendant You're saying the jury did specifically find, because of the instructions given, that the defendant used, attempted to use, or threatened to use a dangerous weapon. Yes, the guilty verdict shows that the jury necessarily found that the defendant used, attempted to use, or threatened to use the dangerous weapon, explosives, or fire. Let me also flag for my colleague jury instruction number 18 at SCR 789, and that specifically instructs the jury that if they find the defendant guilty, you must also decide if the government has proven beyond a reasonable doubt that the firearm the defendant used or carried was a short-barreled shotgun and that the defendant brandished or discharged the firearm. Yes, and that special finding, Your Honor, goes to the penalty under 924C, so normally it would be a five-year penalty simply for carrying or using the firearm, but where the jury specifically finds that the firearm is a short-barreled shotgun. It's a mandatory 10-year minimum sentence, the same way that when the jury specifically found here that the defendant discharged the firearm, it's a mandatory 10-year sentence under 924C1A and under 924C1B. I recognize that I've gone much over my time. No, well, we took you over time. I've got a question unrelated to the merits. Why is this case being argued out, brief written, and you're coming at a DOJ rather than handled by the local U.S. Attorney's Office? So, Your Honor, this was jointly prosecuted by our criminal section in Washington, D.C., and the local U.S. Attorney's Office under the U.S. Attorney's manual civil rights appeals go through the civil rights appellate section in Washington, D.C., and so it's kind of our normal process, and certainly where we jointly prosecute the case below, we generally take the lead on the appeals and the civil rights criminal statutes. Oh, so let me understand this a little more. So DOJ was involved in the trial as well? Yes, so one of our attorneys from the criminal section of the civil rights division, which is based in Washington, D.C., co-prosecuted the case with one of the AUSAs out of the Eastern District of California. And let me understand the underlying policy. There's a DOJ participates in the prosecution. When it is, what's the category of case? How is it defined? It's normally, well, there are different kind of considerations that go into the staffing of the cases. The U.S. Attorney's Offices, where there are criminal civil rights offenses, always provide notice to the criminal section of the civil rights division that they are proceeding or they need certification from the DOJ leadership on certain sorts of the criminal civil rights violations. Sometimes they can't indict without approval. Other times they can go forward simply with notice, depending, I think, on resources, both at the local U.S. Attorney's Office and in the criminal section, the complexity of the case, whether or not there are issues of substantial importance. Thank you. Thank you. Unless there are further questions, Your Honor, we'd ask the Court to affirm in all respects. Thank you. But two minutes on the clock, please. I would note to the panel that even — well, first, the decision about whether this was a crime of violence was taken completely out of the jury's hands. The jury was instructed in the instructions on count two, you must find this — I instruct you that this is a violent felony. Okay? So as a matter of law — I'm not sure I understand what your point — are you referring to the language that I read a few minutes ago? Under S.E.R. 789, instruction 18? I believe so. Okay. Because they were told that they had to determine whether — you know, what he carried and how he brandished it. In the verdict, they were — they had checkmarks for that. But in the actual jury instruction, the Court said, and it was in bold, that I believe that the jury was instructed, you must find this — I instruct you that this is a violent felony. If you find, by proof beyond a reasonable doubt, that he carried a short-barreled shotgun and brandished or discharged it. I agree with you. The next line says, I instruct you that interference with housing rights as charged in count one is a Federal crime of violence. Correct. Yeah. So that part, which to me, is the question here. But it comes after telling the jury that they have to find, by proof beyond a reasonable doubt, that he carried and either brandished or discharged the short-barreled shotgun. Right. In order to find that he committed the weapons offense, which is 924C, they have to find that he had a weapon. Well, I guess what I'm trying to figure out is, where's the error here with regard to telling the jury, once they've found those two key facts, that if they find that, by proof beyond a reasonable doubt, as a matter of law, that that constitutes a crime of violence? That makes perfect sense to me. Well, you're the that if you find this, then under the law, that's a crime of violence. And I think that's a correct statement of the law, is it not? The jury, the court, I don't think that is, I wish I had it right in front of me. Marshal. Okay, this is the instruction for 924C. Right. And then look about the middle of that page, and you'll see where he told them that right after, if you find those two things, then I instruct you that interference with housing rights here would be a crime of violence. Right. But those are separate clauses. The court is saying, he's saying that the instruction for interference with housing rights is a Federal crime of violence. These other are related to the 924C. Yes. Not to 3631. But that gets back to my question, where's the error here? I realize they're talking about both count one and count two in one instruction, but the declaration of a matter of law follows telling the jury that they have to find these two key elements by proof beyond a reasonable doubt. And if that's the case, then where is the error in telling the jury, once you've made that determination, that is a crime of violence under 3161? But those are two different things. 3631, it's instructing that I'm here, I'm taking this decision out of your hands. I'm instructing you to find this and this under 924C. But I'm instructing you as to 3631 that you don't have a decision to make because I'm instructing you that that's a crime of violence and therefore qualifies under 924C. Let me come out in another way. If that language about proof beyond a reasonable doubt to find those two elements had been included in the instruction for 3161, followed by the statement that this would be a crime of violence, would that be error? Well, it would be a different case. Well, I'm trying to find out what difference it makes that it was included in an earlier instruction. We look at the instructions as a whole, do we not? Right. In order to determine whether the jury was properly instructed on it. Right. But they're two different statutes. Yes. 3631, instead of saying — 924C requires that it's an analysis of a crime of violence, correct? Right. And the Court instructed them that 3631 is a crime of violence. Well, I'm not sure we talked about this the first time you were up, but where I was going with my questions on the modified categorical approach was that if we determined that these facts occurred, that he employed a short-barrel shotgun, that would be a crime of violence under 3161, would it not? I — no. No? No. What more would the jury have to find? Physical force. Brandishing or discharging. Why is that not physical? A short-barreled shotgun. I mean, this is a really noxious weapon. And if you're displaying it or firing it at the same time you're telling somebody, get out of oil, Dale, that's interfering with housing rights by force or violence, isn't it? It is — well — I don't know how — I don't know what more aggravating facts you would need in order to reach that conclusion. Well — well, there are a lot more aggravating facts you would need. Well, he didn't shoot the victim. I mean, we — fortunately, the victim survived here. He missed. Well — He didn't shoot at him. He didn't shoot at him. We didn't hit him, right? It was on the air, I was going to say. Maybe he just missed, or maybe he was aiming up into the air. Yeah. No, the district judge found he shot in the air. There was no attempt to hit him. Of course not. I thought he found that it wasn't established that he shot. Yeah. And what comes up must come down somewhere, right? Well, supposedly they never found anything, but yes, of course, something — what comes up must come down. Well, I mean, I think to a certain extent we're arguing over how many angels can dance on the head of a man. And the facts, in my opinion, and in the law, don't necessarily come up. The fact that Mr. Whittington was — had never been convicted of a felony doesn't matter. It's — you know, what matters here — Well, the district court accommodated for that, did it not, by a below-guideline sentence? Well — He departed, by other words. He did, but the sentence itself was not really a below-guideline sentence, because — Well, that's because of the mandatory consecutive — Not the — let's set aside just for a moment the 924C. The fact is that under 3631, the — the guideline is 12. But then the probation office, because it was struggling with the same thing we're struggling with here, is this violent, decided, well, this is a lot like an assault or an attempted murder. And enhanced the sentence within the sentence, bringing it up to the 87 months instead of the 50 sentences. But the district court balked at that the first time around and said we're going to have to have another resentencing, because I think that's overreaching. Yes, he did. He balked at it. And, you know, at that point, I think that probably a signal could have been sent to defense counsel that perhaps some sentencing objections should have been filed. But they weren't. And the — the bottom part of the guideline, in the — in the — in both sentencing transcripts, both sentencing matters, said that attempted murder and assault were added in. The first time, they guided the whole guideline. The second time, they added four levels. But they were still considered to be the underlying facts, which were not true. And the Court didn't say — But the district court then departed downward, did it not, the second time around? Yes. To 60 months. To 60 months. Yeah. That was — that was — That's correct. That was all that was behind my question. Right. Okay. Okay. Thank you. I would submit. Okay. Thank both sides. United States v. Whittington submitted for decision the next case and the remaining case on the calendar, United States v. — and I apologize. I don't know whether to pronounce the name Haig or Hage. I'm sure I will be informed.
judges: Kleinfeld, W. Fletcher, Tallman